**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID CALCIANO,** | : | **Civil No. 1:23-CV-367** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MARTIN O'MALLEY,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.   Introduction

In the instant case we are called upon to apply two central tenets of Social Security law—one which is a longstanding principle and the second which is a concept of more recent vintage. The longstanding principle which guides us in this case is the deferential standard of review that applies when considering Social Security appeals, a standard of review which simply asks whether there is "substantial evidence" supporting the Administrative Law Judge's (ALJ)

---

[1]   Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit.

determination. With respect to this legal guidepost, as the Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The second controlling legal principle implicated in this appeal is a concept of more recent vintage, the Commissioner's decision to eschew the treating physician rule, which created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy, in favor of a more holistic approach which examines all medical opinions in terms of their overall consistency and supportability.

2

In David Calciano's case, the ALJ was presented with a sparse clinical record supporting the severity of Calciano's emotional impairments and a diversity of medical opinions, many of which found that Calciano's impairments were not wholly disabling. On this record, the ALJ concluded that Calciano—who was 23 years old but had no prior relevant work experience—could perform some work. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" <u>Biestek</u>, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## II.   <u>Statement of Facts and of the Case</u>

On October 23, 2020, David Calciano filed an application for supplemental security benefits pursuant to the Social Security Act, alleging an onset of disability on June l, 2015. (Tr. 16). According to this application, Calciano was disabled due to the following impairments: generalized anxiety disorder, moderate depressive disorder, and agoraphobia. (Tr. 18). Calciano was born in March of 1997 and was 23 years old at the time of this application. (Tr. 25).  He had a high school education but had no prior relevant work experience. (<u>Id.</u>)

3

### A. **Calciano's Clinical History**

With respect to Calciano's emotional impairments, the medical and clinical record was meager consisting of little more than 200 pages. (Tr. 274-499). These treatment records reflected a generally conservative course of treatment for Calciano's anxiety and depression which consisted largely of medication maintenance. (Tr. 277-282). Moreover, the clinical records indicated that Calciano experienced no more than a moderate degree of depression and responded well to the treatment he received.

Thus, on December 11, 2019, Calciano was diagnosed as experiencing moderate depression based upon a depression survey he completed. (Tr. 296). At that time Calciano reported that he had not been taking his medication but had recently started back on a medication regimen. (Id.) One month later, on January 10, 2020, a depression survey undertaken by Calciano revealed a depression score of 4, a score which was indicative of no depression. (Tr. 290). At that time Dr. Michael Fox, Calciano's treating doctor reported that he was:

> [D]oing much better on Abilify, escitalopram and Klonopin. He is now regularly leaving the house and going to his aunts and also assisting his father on jobs outside the house. He is feeling much better and has almost no depression and his anxiety is markedly improved. I did tell both he and his parents that he still needs to see a psychiatrist to address some of the issues that he has and also to adjust his medications if needed although he is doing very well on them right now.

4

(Tr. 291).

This unremarkable medical history continued throughout 2020. For example. nursing notes from September 1, 2020, indicated that Calciano was reporting no depression and had a depression survey score of 0. (Tr. 282-83). Likewise, on September 6, 2020, Calciano advised his treating physician Dr. Fox that he was doing better, was going out of the house more and had even stayed at a family gathering after his father left. Calciano further reported that his medication, Abilify, helped with his emotional impairments. (Tr. 283).

During a March 10, 2021, clinical encounter Calciano stated he was doing well and reported that his anxiety was under better control. Calciano's father echoed these reports, noting that Calciano had been going out the family functions and even attended the funeral of a relative. (Tr. 443).

B. **Medical Opinion Evidence**

Four medical professionals opined regarding the severity of Calciano's emotional impairments based upon this sparse clinical record. Three of these experts provided detailed analyses which indicated that Calciano possessed some capacity for work. The fourth expert provided an outlier opinion stating that Calciano was completely, totally, and permanently disabled.

At the outset, on January 27, 2021, Dr. Roger Fretz, a state agency expert, opined, based upon a review of Calciano's medical records, that Calciano suffered from anxiety and depression. (Tr. 63). Dr. Fretz concluded that these conditions only mildly impaired Calciano's ability to understand and apply information, but moderately impaired his ability to interact with others, concentrate and adapt to workplace changes. (Id.) Thus, Dr. Fretz opined that Calciano would not be significantly limited in carrying out simple instructions and sustaining an ordinary routine but could face moderate limitations performing more detailed or complex tasks. (Tr. 66). Dr. Fretz further found that Calciano was not significantly impaired in asking simple questions and maintaining appropriate behavior but would encounter moderate impairments working closely with others or with the public. (Tr. 67-68).

On May 25, 2021, Dr. Anthony Galdieri, a second state agency expert, reached a similar conclusion regarding the severity of Calciano's emotional impairments during a reconsideration of his disability claim. (Tr. 73-86). Like Dr. Fretz, Dr. Galdieri ultimately concluded that Calciano was not disabled due to these emotional impairments.

An examining consultative source also reached similar conclusions regarding Calciano's emotional state. On January 19, 2021, Dr. Jennifer Betts conducted a

consultative mental status evaluation of Calciano. (Tr. 427-33).  Dr. Betts reported that Calciano suffered from anxiety and depression but had never been hospitalized for these conditions and had never undergone outpatient psychotherapy. (Tr. 428). According to Dr. Betts, Calciano's appearance was neat and appropriate; his speech was fluent; his thought processes were coherent and goal oriented; he displayed a full affect; clear sensorium; fair insight and judgment; and displayed intact concentration and memory skills. (Tr. 429-30). Dr. Betts also observed that Calciano was able to bathe, dress, and groom independently, and perform cleaning, cooking and laundry independently. (Tr. 430). According to Dr. Betts' evaluation, Calciano experienced no impairments in understanding and carrying out instructions but encountered marked limitations when interacting with others and responding to changes in work routine. (Tr. 432-33).

In stark contrast to these detailed functional analyses was a May 27, 2021, cursory one-page opinion proffered by Calciano's treating physician Dr. Fox who simply stated that Calciano was unable to effectively interact with people or sustain any gainful employment due to his depression and anxiety. (Tr. 462). Likewise in January of 2022, Dr. Fox completed a check box form indicating that Calciano had no ability to function in multiple spheres of work-related activity. (Tr. 487-89).

## C. **The ALJ Hearing and Decision**

It was against this equivocal medical backdrop that Calciano's disability claim came to be evaluated by the ALJ on March 9, 2022. (Tr. 32-57). At the hearing, both Calciano and a Vocational Expert testified. (Id.)

Following this hearing on March 22, 2022, the ALJ issued a decision denying Calciano's application for benefits. (Tr. 13-27). In that decision, the ALJ first concluded that Calciano had not engaged in any substantial gainful activity since his application date. (Tr. 18). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Calciano had the following severe impairments: generalized anxiety disorder, moderate depressive disorder, and agoraphobia (Id.) At Step 3, the ALJ determined that Calciano did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 18-20).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering Calciano's limitations from his impairments, stating that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to jobs that require only occasional changes to workplace routine and setting; is limited to jobs which are low stress (described as having no production rate pace requirement); and in addition, the claimant should have no direct face-to-face interaction with the public; however, the claimant can have

phone contact with the public and occasional interaction with coworkers and frequent interaction with supervisors.

(Tr. 21).

Specifically, in making the RFC determination, the ALJ considered the sparse clinical evidence, the medical opinions, and Calciano's self-described activities. Thus, the ALJ observed that:

> In considering the claimant's daily activities, the claimant reported and testified to a significant range of activities. The claimant said that he has troubles completing tasks, but the claimant also described dressing, bathing, and caring for his hair independently, preparing simple foods (such as cereal and sandwiches), washing laundry, and cutting the grass using a riding lawnmower. The claimant did not identify needing assistance to feed himself and use the toilet. Although the claimant did not discuss engaging much social activity, he explained that he is able to spend time with family, maintain a relationship with his parents, and get along with family, neighbors, and friends. He also reported having the necessary focus, despite his impairments, to take care of personal needs and grooming without any special reminders, count change, handle a savings account, play board games or videogames, watch television, and follow written instructions and spoken instructions.

(Tr. 22-23).

The ALJ also detailed Calciano's clinical treatment records, stating that:

> Although the claimant had some periods during which he experienced elevated symptoms, the claimant attended an examination on January 10, 2020 during which he explained that he was doing much better on Abilify, Escitalopram, and Klonopin, said that he was regularly leaving his home to go to his aunt's home and to assist his father on jobs outside the house, and did not exhibit depression and anxiety (Exhibit 1F). The claimant similarly commented on September 6, 2020 that he was doing better, going out of the house on more occasions, and was able to stay

9

at a family gathering after his father had left (Exhibit 2F). He appeared in no distress when examined on September 1, 2020 (Exhibit 1F). The claimant said on January 26, 2022 that he did not going out for Christmas or Thanksgiving in 2021, but the claimant earlier explained on March 10, 2021 that he was doing well, asserted that anxiety was under better control, and commented that he had been going to family functions (Exhibit 4F). The claimant denied ever requiring a hospitalization for psychiatric reasons.

(Tr. 22).

Given this clinical history, the ALJ concluded that the medical opinions of

Drs. Fretz and Galdieri were:

[P]ersuasive because, although Drs. Fretz and Galdieri did not have an opportunity to examine the claimant, they provided specific reasons for their opinions about the claimant's limitations showing that these opinions are supported by the evidence of record, including careful consideration of the objective medical evidence and the claimant's allegations regarding symptoms and limitations. Their opinions are consistent with each other and are consistent with the medical evidence of record demonstrating a positive response to mental health treatment. Furthermore, Drs. Fretz and Galdieri had the advantage of reviewing the evidence from the claimant's consultative examination by Dr. Betts and therefore had a broad longitudinal perspective in issuing their opinions. Drs. Fretz and Galdieri's State agency opinions are consistent in part with Dr. Betts' above-discussed consultative examining opinions indicating that the claimant has no considerable limitations with respect to understanding, remembering, and carrying out instructions.

(Tr. 24).

The ALJ also carefully examined the opinion of the consulting, examining

expert, Dr. Betts concluding that:

10

Dr. Betts' findings and opinions are persuasive with the exception of her opinions as to interacting with others and responding to usual work situations and work setting changes, which the undersigned finds unpersuasive because these opinions are not supported by Dr. Betts' clinical findings. Despite Dr. Betts' observations that the claimant reported withdrawing socially, Dr. Betts did not suggest that the claimant struggled with the pressures of the examination, described the claimant as cooperative and friendly, said that the claimant related adequately, and stated that the claimant maintained appropriate eye contact. Dr. Betts additionally indicated that the claimant was dressed appropriately and neatly, had satisfactory grooming and hygiene, did not have evidence of hallucinations, paranoia, or delusions, denied homicidal and suicidal thoughts, and displayed fair insight and judgment.

(Tr, 23).

The ALJ less persuasive power to Dr. Fox's summary, outlier opinions, noting that:

Even though Dr. Fox treated the claimant, his assessments are unpersuasive because, as discussed above, a broad view of the claimant's medical records reveal an overall favorable response to treatment. For instance, the claimant said on September 6, 2020 that he was doing better, going out of the house on more occasions, and was able to stay at a family gathering after his father had left (Exhibit 2F). He similarly noted on March 10, 2021 that he was doing well, asserted that anxiety was under better control, and commented that he had been going to family functions (Exhibit 4F). Dr. Fox's assessments additionally are inconsistent with the opinions offered by Drs. Fretz and Galdieri, who described only mild or moderate functional limitations. Lastly, Dr. Fox does not articulate the basis for such substantial limitations.

(Tr. 25).

Having arrived at this RFC assessment, the ALJ found that Calciano, who had no prior work history, nonetheless could perform work available significant numbers in in the national economy. (Tr. 25-26). Accordingly, the ALJ concluded that Calciano did not meet the stringent standard for disability set by the Act and denied this claim. (Tr. 27).

This appeal followed. (Doc. 1). On appeal, Calciano contends that the ALJ erred in his assessment of Dr. Fox's treating source opinion; erred in failing to adopt all of Dr. Betts' findings; and crafted a flawed and inadequate RFC in this case. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.   <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our

review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. Consolidated Edison Co. v. NLRB,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial

evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777

14

F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess, the court of appeals considered the question of whether an RFC, which limited a claimant to simple tasks, adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple

work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc.

Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In

formulating a mental RFC, the ALJ does not need to rely upon any particular form

of words. Further, the adequacy of the mental RFC is not gauged in the abstract.

Instead, the evaluation of a claimant's ability to undertake the mental demands of

the workplace will be viewed in the factual context of the case, and a mental RFC is

sufficient if it is supported by a valid explanation grounded in the evidence.

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a

claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20

C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe

physical or mental impairment that makes it impossible to do his or her previous

work or any other substantial gainful activity that exists in the national economy.  42

U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of

the Social Security Act, a claimant must show that he or she contributed to the

insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

19

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at

20

*5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom. Metzgar</u>
<u>v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun</u>
<u>v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12,
2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366
(M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating
the existence of a medically determinable impairment that prevents him or her in
engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this
burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show
that jobs exist in significant number in the national economy that the claimant could
perform that are consistent with the claimant's age, education, work experience and
RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive
requisites. Most significant among these legal benchmarks is a requirement that the
ALJ adequately explain the legal and factual basis for this disability determination.
Thus, in order to facilitate review of the decision under the substantial evidence
standard, the ALJ's decision must be accompanied by "a clear and satisfactory
explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d
Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

## C. **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see

20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she

23

considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June

24

10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV– 00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

### D. <u>Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms</u>

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is also illustrated by those cases which consider analysis of a claimant's reported pain. When evaluating lay testimony regarding a claimant's reported degree of pain and disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. *Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir.1994) (citing *Stewart v. Sec'y of Health, Education and Welfare,* 714 F.2d 287, 290 (3d Cir.1983)); see also Stout v. Comm'r, 454 F.3d

> 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. <u>Ray v. Astrue</u>, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993)).

<u>Zirnsak v. Colvin</u>, 777 F.3d 607, 612–13 (3d Cir. 2014).

> Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 409 (3d Cir. 1979); accord <u>Snedeker v. Comm'r of Soc. Sec.</u>, 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; <u>Schaudeck v. Comm'r of Social Security,</u> 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

<u>McKean v. Colvin</u>, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted).

Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of

a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). It is well settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence, or functionally

limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to medical signs and laboratory findings, diagnoses, and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her

symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015); George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014).

## E. **The ALJ's Decision is Supported by Substantial Evidence.**

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of review, we are constrained to find that substantial evidence supported the decision by the ALJ that Calciano was not disabled. Therefore, we will affirm this decision.

Calciano first contends that the ALJ erred in his assessment of the opinion of the treating source, Dr. Fox, and should have also adopted all of the social limitations found by Dr. Betts. However, we note at the outset that nothing compels an ALJ to uncritically embrace any particular medical opinion. Quite the contrary, it is clear that "[t]he ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations." <u>Chandler</u>, 667 F.3d at 361. Further, in making this assessment of medical opinion evidence, "[a]n ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion." <u>Durden</u>, 191 F.Supp.3d at 455.

Here, the ALJ considered the opinion of Dr. Fox, and the most severe limitations found by Dr. Betts, but concluded these opinions were unpersuasive. In reaching these conclusions the ALJ noted that these opinions were at odds with Calciano's self-reported activities, and conflicted with Calciano's treatment notes, which frequently contained generally benign findings. The considerations cited by the ALJ in the assessment of these opinions were valid grounds for discounting those opinions. Thus, an ALJ may discount such an opinion when it conflicts with other objective tests or examination results. <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment

notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).  In this case, the ALJ cited discrepancies between these medical opinions and their own treating records, as well as other evidence, when finding that these opinions lacked persuasive power. These were valid factors for the ALJ to take into account when assessing opinion evidence and substantial evidence supported the ALJ's evaluation of these opinions. There was no error here.

Moreover, in crafting the RFC in this case, the ALJ considered not only the persuasive opinion evidence but also took in account treatment notes indicating improvement in Calciano's mental state and Calciano's activities of daily living.  On this score, we cannot conclude that the ALJ's reliance on this objective evidence was error. Rather, the ALJ carefully weighed all of the evidence during the relevant time period. Further, the ALJ considered Calciano's subjective symptoms but found that the objective findings and his activities of daily living did not support his alleged

level of limitation. Accordingly, we find that the ALJ's RFC determination in this case is supported by substantial evidence.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.   **Conclusion**

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.

Submitted this 15th day of May 2024.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge